# Eldred *versus* Hazlett's Administrator.

*Discretionary Power to open Judgments.—Revival by sci. fa. a Continu-
tion of Original.—Constructive Notice of Transfer.—Basis of Recovery
on sci. fa.—Evidence.*

1. Opening judgments is usually a matter of discretion in the court below:
but if it were not so, the Supreme Court could not correct errors in a case
the record of which is not before them.

2. The revival of a judgment by *scire facias*, is but a continuation of it,
and is a distinct action in form only.    The secondary judgment will not con-
trol the original, is not conclusive as to its effect, nor any evidence whatever
in regard to it.

3. Where a judgment was opened for the purpose of hearing the defence,
it was held not error for the court to limit the amount which the plaintiffs
were entitled to recover, if at all, where the jury, though left free to find a
verdict for that amount if the evidence justified it, found entirely for the
defendant.    An omission to indicate a larger basis of recovery is of no con-
sequence, where it appears that nothing was due.

4. Where defendants pleaded that the plaintiff had in writing agreed to
surrender the bond in controversy, which had been assigned to them, and
plaintiff replied an estoppel by written acknowledgment of the debt by
defendants' intestate before the assignment, it was *held* not error to admit
evidence in regard to the instrument, because if the alleged estoppel failed,
it would then have the effect to which it was entitled.

[Eldred *v.* Hazlett's Administrator.]

5. Where the "instrument" was but an executory declaration without consideration to surrender the bond on a certain contingency which had not happened, and without certainty as to time, place, or circumstance, when it should happen, it would bind no one, and it would be error to allow it as a defence. Hence it was error to charge the jury not to give the instrument any consideration, if they found defendants' intestate had notice of the assignment of the bond, when the paper containing the writing was delivered to him; for if notice was not proven, effect might be given to an instrument entitled to none.

6. The assignment of the bond on the record was constructive notice to all parties, and it was error to instruct the jury in such a way as that they might infer that actual notice must be shown.

7. Though there be error in the ruling of the court below, the Supreme Court will not reverse, if the excepting party received no injury therefrom.

8. Where the genuineness of a letter, alleged to have been written by defendants' intestate acknowledging the debt after the assignment of the bond, was in question, and the jury found against it, the instructions of the court, though erroneous, were harmless, if they did not influence the jury to that verdict. If genuine, defendants were estopped. If not, there was nothing to interpose between the set-off and the assignee, and a verdict for the defendants necessarily resulted.

Error to the District Court of *Allegheny county.*

This was an issue tried in the court below, where a judgment, in which M. Eldred, Jr., for the use of Patricks & Friend and now for the use of Mrs. Ann Patrick, was plaintiff, and James Murray, administrator *de bonis non* of Dr. Robert Hazlett, was defendant, had been opened and the defendant let into a defence.

The case was this. On the 24th of June 1852, the defendant's intestate gave his judgment-bond to M. Eldred, Jr., the legal plaintiff, in the penal sum of $16,000, conditioned for the payment of $8000 with interest from date, in eighteen months, upon which judgment was confessed as of July Term 1852, No. 513, in the District Court of Allegheny, June 26th 1852, by virtue of the warrant of attorney thereto attached. In this bond the obligor waived the condemnation of his real estate and the benefit of all exemption laws, &c. In February 1854, this bond and judgment was assigned to Patricks & Friend, by whom it was on the 28th of December 1854 assigned to Mrs. Ann Patrick, whose executors were the beneficial plaintiffs. Dr. Hazlett died in September 1854, about three months prior to the assignment to Mrs. Patrick, and a *scire facias* was issued against his administrator to revive the judgment to January Term 1855, No. 459. On the 21st of February 1856, a rule was entered by the administrator to show cause why the judgment should not be opened and defendant let into a defence, which rule was made absolute April 28th 1856. Same day the following pleas were filed by defendant:—

1. *Non est factum.*
2. Release of said bond, except the sum of $1500.

[Eldred *v.* Hazlett's Administrator.]

3. Set-off of certain notes and due-bills given by M. Eldred, Jr., to defendant's intestate, viz. :—A promissory note for $6500, dated June 24th 1852, payable eighteen months after date ; one due-bill, dated October 19th 1851, for $250 ; one other due-bill, from same to same, dated February 5th 1853, for $183.41, and also one other due-bill, from same to same, dated 15th February 1853, for $150.

4. Failure of consideration as to the said plea of $1500 in second plea mentioned.

5. That the plaintiff, by his writing of the 4th March 1854, agreed to surrender to the defendant the said bond in controversy.

6. Payment.

7. That said bond was fraudulently obtained by the plaintiff, without consideration. And

8. That the beneficial plaintiff never gave any consideration for said bond, and that the same was not assigned to her *bonâ fide.*

The plaintiff traversed defendant's 2d, 3d, 4th, 5th, 6th, and 7th pleas—and replied to the 8th plea that the beneficial plaintiff is a purchaser for a valuable consideration, without notice of any of the defences set up in the 2d, 3d, 4th, 5th, 6th, and 7th pleas of defendant; and further, that the defendant is estopped from setting up the matters and things in said pleas contained, by his intestate's written and verbal acknowledgment made before the assignment of the said bond and judgment to Patricks & Friend, under whom the beneficial plaintiff claims; and also by verbal and written acknowledgments to the beneficial plaintiff before the assignment of the same to her.

That said bond was made and delivered to the said plaintiff for the purpose of negotiation and transfer, for the accommodation of the plaintiff, and was negotiated by the plaintiff in pursuance of the assignment and understanding.

The defendant rejoined that he is not estopped by any written or verbal acknowledgment of his intestate from setting up the said matters and things in his said pleas pleaded, and that the said bond was not made and delivered for negotiation and transfer for the said plaintiff's accommodation, as in replication alleged. On the issues thus made up the parties went to trial.

October 21st 1856, the case was tried by jury, and a verdict and judgment entered for plaintiff for $2272.33. A writ of error was then filed, and on March 31st 1859, record was returned, with certificate of judgment reversed, and *venire de novo awarded.* April 11th 1860, the death of Mrs. Ann Patrick was suggested, and W. Wallace Patrick, Robert Patrick, and Andrew Patrick, executors of Mrs. Ann Patrick, deceased, substituted as beneficial plaintiffs. April 13th 1858, *scire facias de novo qu. ex.*

[Eldred *v.* Hazlett's Administrator.]

*non*, and to continue the lien of the judgment issued, which was served personally on all the defendants. August 29th 1859, judgment *sec. reg.* in default of an appearance, for $16,000, to be released on the payment of debt, interest, and costs in the original action. April 11th 1860, rule to show cause why this judgment should not be set aside or opened; reasons and affidavit filed. April 13th 1860, judgment ordered to be opened, and the defendants let into a defence; and it is ordered that the reasons and affidavit filed by the defendant be filed *nunc pro tunc*, as of the 11th instant.

In April 1860 the cause was again tried. On the trial the plaintiff gave in evidence the bond with the assignment above mentioned, and then offered the record of a suit by M. Eldred for use to James Murray, administrator *de bonis non* of Robert Hazlett, deceased, to April Term 1859, No. 599, being the *scire facias* to show cause why plaintiff should not have execution for the debt and continuance of the lien above mentioned, in which the writ had been served by copy on the administrator, and on the widow and guardian of the minor children of Dr. Hazlett, and judgment entered for default of appearance for $16,000, to be released on payment of debt, interest, and costs in the original action and the costs on the *scire facias*. To which offer defendant's counsel objected, but the court overruled the objection, and admitted the evidence under exception. The plaintiff then rested.

The defendant, to maintain the issue on his part, offered in evidence the following receipt of M. Eldred, Jr., to Robert Hazlett, dated June 24th 1852 :—

" Received of Robert Hazlett, this day, a judgment for $8000, to secure the payment of a certain note given to me by said Hazlett for $1500 payable eighteen months after date, which amount was for a payment made by me to the Fayette Manufacturing Company for said Hazlett. Also, to secure any further sum I may in any way become liable to pay for said Hazlett, during the time above named, or until all accounts due me are paid, so as to satisfy that judgment in full.

M. ELDRED, Jr."

Also an agreement dated March 4th 1854, between Eldred and Hazlett :—

" Pittsburgh, March 4th 1854.

" Whereas, Robert Hazlett has bound himself in writing to pay to M. Eldred, Jr., in a judgment, fifteen hundred dollars—said amount of fifteen hundred dollars was paid by M. Eldred, Jr., to the Fayette Manufacturing Company for said Robert Hazlett, on or about the 24th day of June 1852. Said sum was due to the Fayette Manufacturing Company, on one hundred and fifty

shares of the capital stock of said company, from said R. Hazlett, and was paid by M. Eldred, Jr.; and said company, through their treasurer, did endorse the same on the certificates of stock holden by R. Hazlett, and did cancel all claim against said R. Hazlett, on account of said ten dollars per share on one hundred and fifty shares of the stock of said Fayette Manufacturing Company, so holden by him. Reference to the books of said company will show.

"Now this agreement witnesseth, that if said R. Hazlett and all other *bonâ fide* stockholders, were or are not now liable to pay the remaining sum due on all shares held by them to said company, or to the creditors of said company, by due course of law, then and on the legal and final decision of such a legal proposition by any competent court, in such case, M. Eldred, Jr., agrees to surrender to R. Hazlett, the writing above referred to, to the amount of $1500, without any further delay.

"M. ELDRED, Jr."

To which the plaintiff's counsel objected, but the court overruled the objection, and admitted the evidence under exception, reserving the question of its legal effect.

The defendant then offered,

A note of M. Eldred, Jr. dated June 24, 1852, for $6500, payable to R. Hazlett or order eighteen months after date, with interest.

Also, promissory note dated October 19, 1851, by same to same, at six months, for $250.

Also, due-bill from same to same, dated February 15, 1853, for $150, payable on demand, and rested.

The plaintiff, having first offered evidence that the signature was the proper signature of Robert Hazlett, offered in evidence the following paper:—

"No. 513 of July Term 1852. Judgment in the District Court of Allegheny County, Pennsylvania.

| | |
|---|---|
| M. ELDRED, Jr.<br><br>*v.*<br><br>ROBERT HAZLETT, M. D. | D. S. B. for sixteen thousand dollars, conditioned for the payment of eight thousand dollars, with interest from date of bond, in eighteen months after date. Bond dated July 24, 1852. |

Pittsburgh, February 13, 1854.

Gentlemen:—I have received notice that you have this day purchased from M. Eldred, above named, the above judgment and bond. The whole amount of said bond was justly due and owing at the time I gave him the bond, and the same is still due

and owing by me: and I have no set-off or defence to the said bond or any part thereof.

Yours, respectfully,

R. HAZLETT."

To which defendant's counsel objected; but the paper was admitted, and a bill of exceptions sealed.

Plaintiff then called George Swartz, who testified, *inter alia*, that Patricks & Friend advanced said Eldred $4000 on account of the said bond—$2000 on the 13th of February 1854, and $2000 on the 16th of February 1854, in their time bills of exchange on New York, which were paid at maturity; and that he understood the assignment of the judgment to have been made to Patricks & Friend, as collateral security for the payment of the two drafts and some previous indebtedness of Eldred to them.

Plaintiff then offered in evidence a letter, dated Pittsburgh, August 14, 1854, from M. Eldred to Patricks & Friend, authorizing them to sell said bond for whatever could be had therefor, and to apply the proceeds on account of his indebtedness to them.

Also, check of Ann Patrick on Patricks & Friend, dated December 28, 1854, for $5000.

George Swartz testified that this check was charged to her on the books of Patricks & Friend, on which there was a large balance in her favour.

The defendant controverted the genuineness of the signature, R. Hazlett, to the paper of February 13, 1854, and called a number of witnesses to show that the signature was not that of Robert Hazlett. The plaintiff also called a large number of witnesses, who testified to the genuineness of the signature.

The plaintiff's counsel then submitted the following points:—

1. That the judgment on the *sci. fa.* in No. 599, April Term 1859, is conclusive between the parties to this action, and the verdict must be for the plaintiff.

2. If this preceding point is not affirmed, then the court is requested to charge, that the judgment on the *scire facias* is some evidence in favour of the plaintiff's claim, which the jury may consider in connection with the other evidence in the cause.

3. That the bond in controversy affords a legal presumption that it was given for an actual existing indebtedness, and against any alleged equities or defalcations at its date; and that this presumption is strengthened and fortified by the form and stipulations of the bond, and also by the paper of the 13th February 1854, if the jury believe that the same be genuine.

4. If the jury believe from the evidence that the papers purporting to be signed by M. Eldred, and bearing even date with the bond in controversy, had no existence at that time, their

[Eldred *v.* Hazlett's Administrator.]

mere production is no evidence of their existence anterior to the assignment of the bond to Patricks & Friend; and they constitute no defence either as against the said Patricks & Friend or the executors of Mrs. Ann Patrick, provided the jury believe that the said Ann was a purchaser of said judgment for a valuable consideration.

5. If the jury should believe that the papers bearing date on the 24th day of June 1852, purporting to be signed by M. Eldred, were then in existence, and they also should believe from the evidence that the said bond was created to enable Eldred to raise money on it by assignment, sale, or pledge, and that the said papers were contrived or concocted to enable him to defraud or impose upon any person who might purchase or advance money upon said bond, they cannot be set up as a defence to this action.

6. If the jury believe that the paper of the 13th February 1854 is genuine, it not only tends to rebut, but actually overthrows the presumption arising from the face of the papers anterior to that time—that they were in existence at the period they purport to have been; and the defendant was bound to prove their existence by other evidence than the papers themselves; and not having done so, they are to be excluded by the jury.

7. If the court decline to affirm the foregoing point, then they are requested to instruct the jury, that the date of a paper is only presumptive or *primâ facie* evidence of the time when it was actually executed; and if the jury believe the paper of the 13th February 1854 is genuine, it is evidence from which the jury may infer that not only the papers purporting to be dated on the 24th June 1852, but the other papers in the cause purporting to be dated before the 13th February 1854, had no existence; and if so, they are to be considered as inoperative as against the beneficial plaintiff to the action.

8. If the jury believe the paper of 13th February 1854 to be genuine, and that Patricks & Friend advanced money to Eldred on the strength and faith of it, and afterwards sold the same to Mrs. Ann Patrick, who was a *bonâ fide* purchaser of said bond, the beneficial plaintiffs are entitled to recover the amount of money paid by Mrs. Patrick for said bond.

9. If the court decline to affirm the preceding proposition, then the court is requested to charge that, under the circumstances stated in the preceding proposition, the beneficial plaintiffs would be entitled to recover whatever Patricks & Friend advanced to Eldred on the strength and faith of said paper of 13th February 1854.

The court (WILLIAMS, J.), after stating the facts of the case, charged as follows:—

"There is no controversy in relation to the execution and de-

[Eldred v. Hazlett's Administrator.]

livery of the bond by the intestate.   The defence set up is, that the bond was given as collateral security for the payment of a note for $1500, drawn by Dr. Hazlett in favour of Eldred, of even date with the bond, payable eighteen months after date— and as security for the payment of any further sums for which Dr. Hazlett might become liable to Eldred, during the time which the note and bond had to run; and the defendant alleges that the note for $1500 has been paid, and that the purpose for which the bond was given has been satisfied.

" Another ground of defence is, that the defendant's intestate was the holder of three promissory notes and a due-bill, amounting, in the aggregate, to the sum of $7083.41, exclusive of interest, which the defendant alleges are a good and available set-off to the bond in controversy, without reference to the purpose for, or the consideration on which, it was given.

" 1. The first question for consideration is this, viz. : has the defendant shown a good and valid defence to the bond, as against M. Eldred, Jr., the legal plaintiff in this case?

" The receipt given by Eldred to Hazlett, bearing even date with the bond, and showing the purpose for which it was given, would, in the absence of evidence impeaching its validity, preclude Eldred from recovering anything more on the bond than the note for $1500 therein mentioned, with interest; and even if Eldred could recover the amount of the said note, without the production thereof, or accounting for its absence, still the defendant might set off any claims held by his intestate against the said Eldred.   The receipt of the 24th of June 1852, and the notes signed by Eldred, and produced by the defendant, to which I have referred, if signed and delivered by Eldred, constitute a good and available set-off and defence to the bond as against Eldred, the legal plaintiff.

" 2. Has the defendant shown a good and available defence as against the executors of Mrs. Ann Patrick, the assignee of the judgment?   It is well settled, that the assignee of a bond takes it subject to all the equities which subsisted between the original parties, and that the obligor can set up any defence to the bond in the hands of the assignee, that he could set up to it in the hands of the obligee, at the date of the assignment, and notice thereof.   The defendant, therefore, may set up any defence to this bond in the hands of the executors of Mrs. Patrick, which he could set up to it in the hands of Eldred, unless estopped by some act or thing done by his intestate, from denying its validity. ' If an obligor induce a person to take an assignment of his bond, by admitting the justice of the debt, or declaring that he has no defence, he cannot afterwards deny it to the prejudice of the assignee.   But in order to create this equitable estoppel, it is necessary for the assignee to show, not only that he took the

[Eldred *v.* Hazlett's Administrator.]

assignment, but that he paid a valuable consideration for it.   If the law were otherwise, an ignorant obligor might easily be trapped into an admission, and a sham assignment might be made for the very purpose of keeping out an honest defence.   The assignee must also be able to show, that the admission was made *before* he expended his money in procuring the assignment.   Anything said afterwards can do no harm, because it could not be his motive for making the purchase, and therefore it shall not affect the other party by way of estoppel:'   Weaver *v.* Lynch, 1 Casey 451—Eldred *v.* Hazlett's Admr., 9 Casey 307.

" Did, then, the defendant's intestate induce Mrs. Patrick, or her assignors, Patricks & Friend, to take an assignment of the bond, by admitting the justice of the debt, or declaring that he had no defence to it?   The bond was first assigned to Nancrede and Ballard, to secure the payment of $5000, to be re-assigned on payment thereof.   It was re-assigned to Eldred, on the 11th of February 1854, who assigned it to Patricks & Friend, on the 13th of February 1854, to whom the judgment thereon was also assigned by Eldred, on the 16th of February 1854, as of the 13th, the day on which the bond was assigned.

" Did Patricks & Friend, then, under whom Mrs. Patrick, the plaintiff's testatrix, derived title, take the assignment of the bond and judgment on the faith of the representations of Dr. Hazlett, that the debt was due, and that he had no defence or set-off thereto; and did they advance any money or securities on the faith of the representations he made?   If they did, they would be protected to the extent of the money or securities so advanced.

" The plaintiffs allege that the defendant's intestate, by his letter, dated 13th February 1854, addressed to Patricks & Friend, admitted that the bond was due and owing by him, and that he had no defence or set-off thereto, or to any part thereof.   The defendant alleges that this letter was never signed by Dr. Hazlett—that the signature appended thereto, as the signature of Dr. Hazlett, is a forgery.   Whether the alleged signature of Dr. Hazlett is his genuine and proper signature, or whether it be a forgery, as alleged, is a question of fact for the determination of the jury, from all the evidence in the cause.   (The court here referred to the evidence.)

" If the jury find that the signature is not the genuine signature of Dr. Hazlett, but that the same is a forgery, the defendant is not estopped from setting up any defence which he may have to the bond, and having shown a good defence as against Eldred, would be entitled to your verdict.   But if you find, that Dr. Hazlett signed the letter in controversy, another question will arise for your determination.

" 3. When was the paper executed by Dr. Hazlett, and when was it delivered to Patricks & Friend?   Was it signed and de-

[Eldred *v.* Hazlett's Administrator.]

livered on the day on which it bears date, or was it signed and delivered afterwards, some time between the 13th and 16th of February, or after the latter date? The legal presumption, in the absence of all other evidence, is that the letter was signed and delivered the day it bears date. But this presumption may be rebutted by evidence showing that it was not, in point of fact, delivered the day it bears date, but afterwards. The jury will determine from the date of the letter, its contents, and the testimony of Wm. C. Friend, when the letter was signed by Dr. Hazlett, and delivered to Patricks & Friend.

"4. The next question for your determination is, did Patricks & Friend advance any money to Eldred on the bond, after the letter of Hazlett came into their hands, on the faith of it? If they did, they would be protected for the amount of the advance so made. But if they made no advance on the bond, after the letter came into their hands, the defendant is not estopped by it from setting up the defence to the bond in their hands—and it is no protection for advances previously made, because the letter of Dr. Hazlett could not have been their motive for making them: Weaver *v.* Lynch, 1 Casey 451.

"If the defendant is not estopped from setting up a defence to the bond in the hands of Patricks & Friend, I see no evidence in the case that will prevent him from setting up the defence as against the executors of Mrs. Patrick, the beneficial plaintiffs. There is no evidence that she purchased the judgment on the faith of the letter of the 13th February 1854, or that she even saw it, or was informed of its contents. Besides, if the letter was exhibited to Mrs. Patrick when the judgment was assigned to her, it could not operate as an estoppel against the defence set up here, because it was, as the Supreme Court, in the opinion delivered by Thompson, J., in this very case, have said, '*res inter alios acta*, if genuine,' and 'would not so operate as between the parties to this suit.' Mrs. Patrick was no party to the letter of Hazlett—it was not addressed to her. She had no more right to advance her money on the faith of the letter, than she had to advance it on the faith of the bond or judgment, without inquiry. And there is 'no exception to the rule of the right of the obligor to defalcate or set up equities as against an assignee, unless he has inquired of the obligor, and ascertained that there is nothing to be set up:' Eldred *v.* Hazlett's Admr., 9 Casey 315. But though the letter of the 13th February 1854 cannot operate as an estoppel as between the executors of Mrs. Patrick and the defendant, the former may recover on the bond whatever Patricks & Friend advanced thereon, on the faith of the letter, if the jury find it to be genuine.

"5. I have thus far considered the case, and instructed the jury, on the hypothesis that Dr. Hazlett, at the date of the letter

[Eldred *v.* Hazlett's Administrator.]

of the 13th February 1854, if that letter is genuine, might have set up the same defence to the bond as against Eldred which is now set up by his administrator here, and that the said defence is not fraudulent or covinous. But there are two other aspects in which the case must be considered:

"(1.) The plaintiffs allege that the receipt and note for $6500, given by Eldred to Hazlett, bearing even date with the bond, and the two other notes—one dated October 19, 1851, for $250, the other dated February 5, 1853, for $183.41; and due-bill dated February 15, 1853, for $150—were not in existence when the letter of the 13th of February 1854 was executed and delivered to Patricks & Friend, but that they were subsequently given by Eldred to Hazlett without any consideration therefor, or, if given for a consideration, then for one arising after the date of the said letter, and after notice of the assignment of the bond by Eldred to Patricks & Friend. If the receipt, notes, and due-bill referred to were not given until after the execution and delivery of the letter of the 13th February 1854, and if they were given without consideration, or for a consideration arising subsequently thereto, and after notice of the assignment of the bond and judgment to Patricks & Friend, then they constitute no defence as to the amount advanced by Patricks & Friend to Eldred, and to secure the payment of which the bond and judgment were assigned as collateral security, *even if the jury should find that the letter of the 13th of February 1854 was not actually signed and delivered to Patricks & Friend until after the delivery of the drafts and the assignment of the judgment.* But if the notes and due-bill 'represented a *bonâ fide* indebtedness which was ascertained and fixed before the assignment by Eldred,' then, although ante-dated and delivered after the assignment of the judgment to Patricks & Friend, they constitute a good defence as against the said Patricks & Friend, and their assignee, except so much as was advanced by Patricks & Friend on the faith of the letter of the 13th of February 1854, after the same came to their hands. And if nothing was advanced thereafter, there can be no recovery in this case. The facts are for the determination of the jury. The legal presumption is, that the papers referred to, viz. the receipt notes and due-bill, were signed and delivered on the days and at the times they respectively bear date. But this presumption may be rebutted by evidence showing the fact to be otherwise. The only evidence tending to rebut this presumption is the letter of 13th February 1854, and the forms, conditions, and stipulations of the bond itself, to which your attention has been called by the plaintiff's counsel. If you find that the letter of 13th February 1854 is a true paper—that it was voluntarily given by Dr. Hazlett—it is evidence, taken in connection with the bond itself, tending to rebut the existence of the papers bearing

[Eldred *v.* Hazlett's Administrator.]

date anterior to the letter.   The letter contains admissions against the interest of Dr. Hazlett, and inconsistent with the defence now set up.   It can admit of but one of two constructions, as it seems to me, consistent with honesty and fair dealing—either that the facts stated therein are true, and that Dr. Hazlett had no defence to the bond, or if he had, that he was willing to forego that defence so far as it respects Patricks & Friend; and that it might stand as security for such an amount as they might advance thereon.   The jury will determine, from all the evidence in the cause, what are the facts in the case, and whether they are, or are not, as alleged by the plaintiffs.

" (2.) But the plaintiffs contend that if the receipt and note for $6500, bearing even date with the bond, and the other notes and due-bill given in evidence, were executed and delivered on the days and at the times they respectively bear date, that the bond was created to enable Eldred to raise money on it by assignment, sale, or pledge, and that the said papers, to wit, the receipt, notes and due-bill referred to, were contrived or concocted to enable him to defraud or impose upon any person who might purchase or advance money upon said bond.   And if the facts be as alleged, then these papers cannot be set up as a defence to this action, either as to the amount for which the bond and judgment were pledged to Patricks & Friend, or as to the amount advanced thereon by Mrs. Patrick.   But Eldred and Hazlett had the right to make any arrangement between themselves for the satisfaction of the bond at the time it was given, if it was not intended as a means to defraud others, that they might see fit; and such an arrangement would be as good and effectual a defence against the assignees of the bond, who had taken it without inquiry, as against Eldred himself.   If the papers referred to were not executed for the purpose of enabling the parties to defraud those who might become purchasers or assignees of the bond, then the defendant may set them up as against the assignees with the same effect as he could against Eldred himself, except so far as they may have advanced their money on the faith of the representations contained in the letter of Hazlett of the 13th of February 1854, if the jury find the letter to be genuine.

" The counsel on both sides have submitted a number of points, which will now be considered.   The defendant's points are sufficiently answered in the charge, and so far as they are not answered they are refused.

" As to plaintiff's points, the 1st and 2d are refused.   The plaintiff had the right to issue the writ of *sci. fa.* in order to continue the lien of the judgment, pending the controversy as to the validity and the amount due thereon; and it was an oversight, if not negligence, on the part of defendants, not to enter an appearance thereto.   But the judgment on the *sci. fa.* is not con-

[Eldred *v.* Hazlett's Administrator.]

clusive upon the defendant's rights in this case; if it is, why are we trying the issues which involve the validity, and the amount due on the original judgment? Instead of spending our time in a vain trial, application ought to have been made to the court to revoke the order opening the judgment in this case, if the judgment on the *sci. fa.* is conclusive between the parties litigant here. But the judgment on the *sci. fa.* is not conclusive, nor is it, in my opinion, any evidence in favour of the plaintiff's claim, which the jury may consider in connection with the other evidence in the case. And even if there was any difficulty on this point, I should be disposed to make the rule to open the judgment on the *sci. fa.* already taken, absolute. But it seems to me that the judgment, as entered, being for the penalty to be released on payment of the debt, interest, and costs of this case, may well stand for whatever amount, if any, may be found due on the trial of the issues here. And if nothing be found due, then the defendants will be entitled to have the judgment satisfied on payment of the costs.

" The 3d point is affirmed.

" The 4th and 5th points are sufficiently answered in the charge.

" The 6th point declined.

" The 7th point is sufficiently answered in the charge.

" The 8th point is declined, except so far as affirmed in the instructions contained in the charge; which the jury will bear in mind.

" The 9th point, is already affirmed in the charge.

" The jury will then determine:

" 1st. Whether the defendant has shown a good and available defence to the judgment as against Eldred, the legal plaintiff.

" 2d. If so, whether or not he is estopped by the acts and admissions of his intestate from setting up the same defence as against the beneficial plaintiffs in this case? Did Dr. Hazlett sign the letter of the 13th February 1854, or is the signature appended thereto a forgery?

" 3d. If he signed the letter, when was it delivered to Patricks & Friend?

" 4th. Did Patricks & Friend, after the same came into their hands, advance any money or securities on the faith of it? If so, the executors of Mrs. Patrick would be entitled to recover the amount advanced, with interest from the date thereof. But they would not be entitled to recover more, unless the defence set up here is fraudulent or covinous.

" 5th. When did Eldred execute and deliver to Hazlett the receipt for the judgment and the note for $6500, and the two other notes and due-bill given in evidence? Were they signed and delivered on the days and at the times they respectively bear

[Eldred *v.* Hazlett's Administrator.]

date, or *after* the execution and delivery of the letter of the 13th February 1854? And if they were signed and delivered *after* the letter of the 13th February 1854, were they given without consideration, or for a consideration arising subsequent to the date of said letter, and after notice of the assignment of the bond and judgment to Patricks & Friend? If so, the beneficial plaintiffs may recover the amount advanced by Patricks & Friend, even if the latter did not receive the letter of the 13th February 1854, until after they had delivered the drafts to Eldred, and had taken an assignment of the bond and judgment.

" Was the bond, upon which the judgment in this case was entered, created to enable Eldred to raise money on it by assignment, sale, or pledge?—and were the receipt, and the note for $6500, and the other notes and due-bill given in evidence, contrived and concocted to enable Eldred to defraud or impose upon any person who might purchase the said bond or advance money or securities thereon? If so, the beneficial plaintiffs may recover the amount advanced by Patricks & Friend, or even by Mrs. Patrick, although the receipts and notes may have been executed and delivered when the bond was given.

" One word in regard to the agreement of the 4th March 1854. The jury will give to that agreement no consideration whatever, if they find that Hazlett had notice of the assignment of the judgment to Patricks & Friend, when that paper was delivered to him by Eldred."

To which instructions of the court and answer to the points submitted, the plaintiff's counsel did then and there except.

The jury found in favour of the defendant, and judgment having been entered thereon, the plaintiffs sued out this writ, and assigned for error the following matters, viz. :—

1. The court erred in opening the judgment rendered on the *sci. fa. de novo*, in No. 599, November Term 1859, at the instance of defendant, upon his following reasons :—

"First. A *sci. fa.* on the same judgment is still pending and undetermined, at No. 459, January Term 1855.

"Second. The original judgment had been, was, and now is, opened to let the defendant into a defence on its merits, and a jury sworn is now to try the issue joined therein.

"Third. The reasons given in the opening of the original judgment are again reiterated upon this application."

And in making the following order thereon :—

"And now, to wit: April 13th 1860, the court order the judgment in the above case to be opened, and the defendant let into a defence—and direct this paper to be filed *nunc pro tunc*, as of the 11th inst."

2. The court erred in refusing to charge the jury as requested

[Eldred *v.* Hazlett's Administrator.]

in the plaintiff's first point, and in answering the same as was done.

4. The court erred in not answering plaintiff's fourth point.

5. The court erred in refusing to charge the jury as requested in plaintiff's sixth point.

6. The court erred in refusing to affirm plaintiff's eighth point. And in charging the jury that Mrs. Ann Patrick could recover no more on the bond than Patricks & Friend.

7. The court erred in admitting in evidence the agreement of the 4th of March 1854 (antè, p. 19); and in charging as follows as to the legal effect of said paper: " One word in regard to the agreement of the 4th March 1854. The jury will give to that agreement no consideration whatever, *if* they find that Hazlett had notice of the assignment of the judgment to Patricks & Friend, when that paper was delivered to him by Eldred."

*Hamilton* and *Acheson*, for plaintiffs in error.—The former verdict was for $2272.33 in favour of plaintiff, the last verdict under the same evidence was in favour of the defendant. · This was owing to the errors of the court below, which are here specified:—

1. The order of the court opening the original was no impediment to the issuing of the *sci. fa.* thereon, which was not merely a continuance of the lien, but a call on the defendant to show cause why execution should not issue: Act of 20th March 1827. The issue of a *sci. fa.* pending a former one is an abandonment of it—the pendency of the first should be pleaded in abatement. The judgment on a *sci. fa.* is *quod recuperet*, and a bar to recovery on the original: Chaffe *v.* Childs, 7 Watts 84; Collingwood *v.* Carson, 2 W. & S. 220; Meason's Estate, 5 Watts 464; Custer *v.* Detterer, 3 W. & S. 28.

Being final and adverse, the court had no power to open it after the lapse of three terms: Catlin *v.* Robinson, 2 Watts 379; Stephens *v.* Cowan, 6 Watts 513; Mathews's Executors *v.* Patterson, 9 Casey 487.

2. The propriety of a point is to be tested by the state of the cause when the evidence is closed and the charge is given. At that time this judgment possessed all the qualities of a judgment on a verdict: Bradee *v.* Brownfield, 4 Watts 474. The effect of opening the first was to enable defendant to defend on the *sci. fa.* If the judgment on the *sci. fa.* was not conclusive, it was evidence of the acquiescence of the parties.

4. The fourth point was not fully answered.

5. The paper referred to in this assignment of error was not to have the effect of an estoppel, but to overthrow the *primâ facie* date of the papers offered by defendant. Legal presumptions must give way to known facts: Rex *v.* Upton, 21 Eng.

[Eldred *v.* Hazlett's Administrator.]

Com. Law Rep. 339; Succession of Tilghman, 7 Rob. (La.) Rep. 387.

6. In case of hypothecation with power to sell, the purchaser acquires a title to the whole instrument and the indebtedness which it represents, though it exceed pledgee's advances; which rule applies to the purchaser of this bond from Patricks & Friend.

7. The judgment was assigned to Patricks & Friend, February 16th 1854, while the agreement is dated March 4th 1854, and was therefore improperly admitted. The assignment on the docket is constructive notice to strangers as well as to defendants: 1 Harris 620; 10 Harris 300; 1 Casey 80; 5 Casey 401. But the case was improperly made to turn on the question of actual notice.

*P. C. Shannon,* for defendant in error.—If the court erred in its ruling in another judgment, the remedy here must be in that particular case. The first complaint in this case is that the court opened another judgment, to wit, No. 599 of November Term 1859. The original judgment was to July Term 1852, No. 513; the first *sci. fa.* to January Term 1855, No. 459, while the *sci. fa. de novo* is as above stated. The first writ of error was nonprossed; on the second there was a *venire de novo* awarded. Pending this, and while a trial on the merits was ordered and approaching, it was improper to take judgment on the second *sci. fa.*; and in opening it the District Court were in the exercise of a discretion which will not be reviewed here: Kalvack *v.* Fisher, 1 Rawle 323; Kellog *v.* Krauser, 14 S. & R. 143; Nice *v.* Bowman, 6 Watts 26.

There is no error here. If the record in the second *sci. fa.* were here on this writ, it would exhibit a pending rule to show cause why the judgment should not be opened.

As to the error in omitting to answer certain points, the court properly and truly replied, "They are answered in the general charge," which is sufficient.

The efficacy of the paper dated February 13th 1854, if genuine, was fully set forth in the general charge. It was conceded on the trial that defendant had a good defence against M. E. Eldred, Jr., but it was denied that it was available against Mrs. Patrick's executors; that he was estopped by this paper from setting up a defence to the judgment. The answer was, first, that it was a forgery; and secondly, that it was not executed and delivered to Patricks & Friend until after they had delivered the drafts to Eldred and received from him the bond and judgment as collateral security, and was not therefore the consideration of the transfer. But these points were fairly submitted to the jury, and in this particular there is no cause of complaint.

[Eldred *v.* Hazlett's Administrator.]

The opinion of the court was delivered, January 7th 1861, by

THOMPSON, J.—1. The first assignment of error is to the action of the court in opening the judgment for want of appearance in No. 599 of November Term 1859, being a judgment on a *sci. fa. de novo quare ex. non* in this case. Opening judgments is usually matter of discretion; but if it were not so, we could not correct the error here, for the record in that case is not before us. No other answer is needed to this assignment.

2 and 3. The revival of the original judgment is but a continuation of it. In form the proceeding by *sci. fa.* is a distinct action, but in fact is not so. Satisfaction of the original judgment is a satisfaction of the judgment in the *sci. fa.* So a reversal of the former has the same effect on the latter : 12 S. & R. 412. Here the attempt is to control the original by the secondary judgment—to make the latter conclusive as to what the former must be—to raise the stream above the fountain. This would invert the order of precedence altogether ; and it needs no argument to prove that the court were right in refusing to charge that the judgment was conclusive or any evidence whatever.

On this record, however, there was not room for any controversy in regard to the point, inasmuch as the conclusiveness of the judgment was destroyed by being opened. We cannot inquire at what moment this was done, but will presume it was done during the trial. In either point of sight, the ruling of the court was right.

4 and 5. These errors are not sustained, as the points were substantially answered in the general charge.

6. This error is based upon a supposed erroneous instruction in regard to the amount the plaintiffs might recover, if entitled to recover at all. It was, that they could recover no more than the assignees of the testator could have recovered if suing. This left the jury free to find a verdict for the plaintiffs to that extent, if the evidence should justify it. But the jury found that the plaintiffs were not entitled to recover anything. That a larger sum was not indicated as the basis of recovery, seems to have been of no consequence, since it appears that nothing was due.

7. The testimony, the admission of which and instructions thereon form the seventh specification of error, was received under the fifth plea of the defendants, viz. that the plaintiff by the instrument of writing " agreed to surrender to the defendant the bond in controversy." The replication to this and to other matters pleaded, was, that the defendants were estopped from setting up the several matters in the pleas contained, by the written and verbal acknowledgments of the defendants' intestate before the assignment of the bond and judgment. It would follow of necessity, then, if the estoppel failed, that the instrument of writing of the 4th of March 1854 would have just such

[Eldred *v.* Hazlett's Administrator.]

effect as its character would entitle it to have, and of course no more. This being the state of the pleadings, I can see no error in admitting it. But can this be said of the instructions in regard to it? We shall see.

It was an executory declaration or promise without consideration to surrender up the bond of $8000 upon a certain contingency. That contingency had not happened, and there was neither time, place, nor circumstance fixed for testing whether "Hazlett and all other *bonâ fide* stockholders were or were not liable to pay the remaining sums due on all the shares held by them to said company, by due course of law." If not *liable*, the bond was to be surrendered. This naked unexecuted proposition, without a consideration to support it, would bind nobody; and to allow it effect as a defence would be error, but perhaps without injury in this case.

That it might become effective under the remark of the learned judge, embraced in this assignment, can hardly be doubted. It was this: "The jury will give to that instrument (of the 4th of March 1854) no consideration whatever, if they find that Hazlett had notice of the assignment of the judgment to Patricks & Friend when the paper was delivered to him by Eldred." This was a negative pregnant, and the converse of the proposition would be sure to be followed in case notice was not proved, and in this way effect would be given to an instrument entitled to none, under any circumstances.

So, too, of the remark in regard to notice. I cannot but think it was calculated to mislead the jury. The assignment on the record was constructive notice to the defendant as well as to others: 1 Harris 620; 10 Id. 300; 1 Casey 80; 5 Id. 401. It was dated 13th February 1854. That was notice—but the learned judge put that matter contingently, and in such a way as to lead the jury to believe that actual notice must be shown. Had he not meant this, he should have instructed the jury that there was constructive notice before the receipt of the paper by Hazlett, by virtue of the assignment on the docket, and therefore the paper was inoperative and not to be considered by them. But, conceding that there was error in these particulars, did it do the plaintiff any injury? If not, we will not reverse.

Let us recur to the state of the record and the testimony. The plaintiff claimed by virtue of the assignment of Patricks & Friend, and introduced, after giving in evidence the bond and assignment, the letter of the 13th February 1854. If that letter was genuine, it estopped Hazlett or his administrators from denying the debt so far as Patricks & Friend were concerned, at least as to so much of it as they acquired title to by advance after its receipt. If not genuine, then there was nothing to interpose between the set-off and the assignee, and by this means

2 Wr.—3

[Eldred *v.* Hazlett's Administrator.]

the bond would be satisfied, whether as a bond for $1500 or $8000. I see nothing in the case to prevent this result. The jury undoubtedly found against the genuineness of the letter, and this necessarily resulted in a verdict for the defendants. The instruction complained of had no tendency whatever to influence the jury as to this main point, and for that reason, even if erroneous, was harmless. On all the real points of the case the instructions of the learned judge were eminently impartial, lucid, and fair; and we feel bound, for the reasons given, to affirm the judgment.

Judgment affirmed.