372 A.2d 23

GREEN RIDGE BANK, now by Merger Penn Security Bank & Trust Co.

v.

Richard M. EDWARDS, Jr. and John Edwards.

Appeal of John EDWARDS, Individually and as Executor of the Estate of Richard M. Edwards, Deceased.

Superior Court of Pennsylvania.

Argued Dec. 9, 1975.

Decided March 31, 1977.

⟜65

Paul A. Barrett, Scranton, for appellant.

Otto P. Robinson, Jr., Scranton, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

The question in this case is whether a proceeding to revive a judgment, if it is validly conducted and the revived judgment is duly entered, puts the original judgment beyond reach of a petition to strike or open.

1

On September 1, 1972, Richard M. Edwards, Jr., and John W. Edwards executed an installment note in the amount of $76,826.88, payable to one H. W. Persbacker. Persbacker and his wife endorsed the note to appellee, and on March 6, 1973, on appellee's direction, the Prothonotary of Lackawanna County confessed judgment on the note, as he was empowered to do under the Act of February 24, 1806, P.L. 334, 4 Sm.L. 270, § 28, 12 P.S. § 739. On January 14, 1974, appellee commenced a proceeding to revive the confessed judgment. On February 1, 1974, the Sheriff of Lackawanna County served a copy of the suit on Richard and John Edwards, endorsed with notice to plead. The Edwardses did not plead, and on February 24, 1974, on appellee's praecipe, the Prothonotary entered judgment of revival in the amount of $69,192.02 (credit being given for payments made). In

March of 1974, Richard Edwards died, and John Edwards became executor of his estate. On December 23, 1974, appellee obtained a rule on John Edwards to show cause why appellee should not be permitted to execute on the revived judgment against the assets of Richard Edwards's estate. On January 20, 1975 John Edwards, individually and as executor of the estate of Richard Edwards, filed a petition to strike, or in the alternative, to open.

The lower court in its opinion summarized the issues raised by the petition as follows:

Defendants [appellants] assign as reasons to strike the judgment the following: (1) the warrant of attorney contained in the note was conditioned upon the existence of a default of payment which was not alleged; (2) the Prothonotary had authority to enter judgment limited by an application by a person being the original holder or assignee of such holder, whereas the praecipe directing entry of the judgment contained no identification of plaintiff as either; (3) the Prothonotary had authority to enter judgment limited to an amount, which from the face of the instrument, may appear due, whereas judgment was entered without a factual basis for determining the amount due; (4) the Prothonotary includes interest in the judgment entered, whereas interest was only due in the event of default which was not alleged; (5) the judgment was entered without the appearance of an attorney pursuant to express provisions in the note; (6) the failure to identify the plaintiff as either the payee, assignee or holder of the note, and (7) the failure to provide a statement or affidavit of default showing that defendants did not make an installment payment when due.

Defendants assign as reasons to open the judgment the fact that the installment payments are not reflected to limit judgment to the amount "remaining unpaid;" that interest was included without a statement of default as a condition for the payment of interest, and that there was a failure of consideration in that work for which the note was delivered was not properly completed.

Plaintiff's [appellee's] response to the defendants' petition is that the installment note on which judgment was entered provided for a release of errors in the entry of judgment, and further, that the revival proceedings mentioned above preclude the defendants' petition under the circumstances of this case. At the time of argument plaintiff's counsel admitted that the confessed judgment was wanting in several respects, but that the revival proceeding, without answer from the defendants, and subsequent entry of judgment, cured the defects alleged by defendants.

(Record, at 50a–51a)

## 2

The lower court proceeded on the assumption that appellants' petition alleged such defects in the original confessed judgment as would support an order directing that the judgment be stricken. In so proceeding the court was supported not simply by the admission by appellee's counsel, "that the confessed judgment was wanting in several respects," but by settled law. First, no affidavit of default was submitted when the judgment was confessed. "Where authorization to enter a judgment by confession is dependent upon a default by the defendant there must be an averment of such default before the warrant can be exercised and a valid judgment entered." *Sterling Electric & Furniture Co. v. Irey*, 189 Pa.Super. 450, 452, 150 A.2d 363, 365 (1959). Second, the amount owed on the note was not apparent from its face.

[I]t is well settled that, under the Act of 1806 [the Act under which the Prothonotary confessed judgment in the present case], the Prothonotary can enter judgment only for the amount which, from the face of the instrument, may appear to be due. . . . The entry of judgment is a ministerial act by the Prothonotary and, if the amount of the judgment cannot be ascertained without resort to evidence dehors the writing, then he has no statutory authority to enter the judgment: *Lansdowne Bank & Trust Company v. Robinson*, 303 Pa. 58, 154 A. 17 (1931).

*Lenson v. Sandler*, 430 Pa. 193, 197, 241 A.2d 66, 68 (1968).

Having recognized the defects in the original judgment, the lower court nevertheless denied appellants' petition to strike or open, holding that

a judgment revived by scire facias proceedings, following notice and the entry of a default, cures the defects complained of in this case. Ample opportunity was afforded to raise objections to the judgment in the scire facias proceedings. Absent fraud, collusion or payment, the present judgment stands cured of the defects complained of in this action.

### 3

■ An extensive review would prove the lower court right in its conclusion that the cases appear to go both ways. On the one hand, there is this:

The revival of the original judgment is but a continuation of it. In form the proceeding by sci. fa. is a distinct action, but in fact is not so. . . . [T]he attempt . . to control the original by the secondary judgment—to make the latter conclusive as to what the former must be—[is] to raise the stream above the fountain.

*Eldred v. Hazlett's Administrator*, 38 Pa. 16, 32 (1860). On the other hand, there is also this:

A judgment regularly revived by sci. fa. is not void even if the original judgment was void. A sci. fa. is a substitute for an action of debt elsewhere; the judgment upon it is quod recuperet instead of a bare award of execution, it therefore warrants the awarding of the execution . . .. The last judgment cannot be considered invalid, although it was entered on a sci. fa. issued on a previous judgment that was void . . . .

*Duff v. Wynkoop*, 74 Pa. 300, 305 (1873) (citations omitted).

Confronted with this apparent inconsistency, the lower court reviewed and decided to follow several decisions by Courts of Common Pleas that relied on *Duff*—in particular,

*Mayer Furniture Company v. Putt,* 3 D. & C. 542 (1923). Upon reflection we have concluded that this was error.

In *Duff* an original judgment was revived by default on a sci. fa. On execution on the revived judgment, certain land was sold at sheriff's sale to the plaintiff, who brought action in ejectment. It is important that the subject matter of the action was land, for that brought the case within the Act of 1705, sect. 9, 1 Sm.L. 57, 61 (1810), which provided that

if any of the said judgments, which do or shall warrant the awarding of the said writs of executions, whereupon any lands, tenements or hereditaments, have been or shall be sold, shall, at any time hereafter, be reversed for any error or errors, then, and in every such case, none of the said lands, tenements or hereditaments, so as aforesaid taken or sold, or to be taken or sold upon executions, nor any part thereof, shall be restored, nor the Sheriffs' sale or delivery thereof, avoided, but restitution, in such cases, only of the money or price for which said lands were or shall be sold.

From this it is apparent that on its facts *Duff* concerned only a special situation, *i. e.,* an execution within the Act of 1705. If the broad language of *Duff,* that "[a] judgment regularly revived by sci. fa. is not void even if the original judgment is void," is read as referring only to such an execution, *Duff* and *Eldred* may be made consistent.

■ If reasonably possible, cases should always be read as consistent with each other; but apart from this general principle, there is other support for confining *Duff's* broad language to its special facts. Where land is involved, there would appear to be particularly compelling reasons why a judgment should be found final; at least, the Act of 1705 suggests that the legislature may have thought so. This suggests that where land is not involved, a revived judgment should be given less effect; and this suggestion is confirmed by a relatively modern case, which did not cite *Eldred* but nevertheless supports it. In *Schuylkill Trust Co. v. Haupt,* 359 Pa. 338, 59 A.2d 73 (1948), the plaintiff issued a sci. fa. to revive a judgment entered after default. The

defendants neither appeared nor answered the sci. fa., but when execution issued, they filed a petition to open the original judgment, alleging accord and satisfaction. The lower court denied the petition. Reversing, the Supreme Court stated:

> The learned court below appears to have thought that defendants' failure to put in this defense to the scire facias was fatal. It is not conclusive: cf. *Augustine v. Wolf*, 29 Pa.Super. 336, 339. Unexplained it is of course an important fact. We think that on the case presented by the depositions judicial discretion required that the judgment should have been opened and defendants let into a defense.

*Id.* 359 Pa. at 340, 59 A.2d at 74.

 This statement is dispositive of the present case. If entry of a revived judgment by default "is not conclusive" of a petition to open the original judgment, neither can it be conclusive of a petition to strike the original judgment. A debtor who wishes to have a judgment opened is always required to establish that he has acted promptly. *See* 7 Standard Pennsylvania Practice 43–44. In other words, since a petition to open is an equitable proceeding, the debtor's conduct is a relevant consideration. By contrast, one who petitions to have a judgment stricken is required to show purely formal defects; given such defects, the petitioner prevails without regard to whether his conduct has been equitable. From the fact that the Supreme Court ordered the judgment opened in *Schuylkill Trust Co. v. Haupt, supra*, where the entry of the revived judgment was persuasive evidence (the Court called it "an important fact") that the petitioner's conduct had not been equitable, we may infer with considerable confidence that the Court would have allowed a petition to strike, for there the petitioner would not have been required to explain his conduct, since it would have been immaterial.*

---

* In fairness to the lower court, we note that *Schuylkill Trust* was not cited to it, nor for that matter to us.

Judge CERCONE, concurring, finds a less muddled answer to the question in this case, in broad language of *Smith v. Bald Hill Coal Co.*, 343 Pa. 399, 23 A.2d 466 (1942), *First National Bank & Trust Co. v. Laubach*, 333 Pa. 344, 5 A.2d 139 (1939), and 6A Standard Pa. Practice 659 (1960). However, the last source also states at 660: "[T]here is authority that if, upon inspection of the record of a judgment, it appears that the judgment was entered by a court without jurisdiction, the scire facias proceedings on a judgment must fail."

In *Vichosky v. Boucher*, 162 Pa.Super. 598, 600, 60 A.2d 381, 382, we held:

[T]here is a distinction between a judgment which because of procedural irregularities, is voidable merely and one which is void *ab initio*. The justice must have jurisdiction of the subject matter, and of the person of the defendant as well, to enter a valid judgment and for want of jurisdiction the judgment may be attacked at any time. "It is never too late to attack a judgment for want of jurisdiction of either the subject matter or the person for a fatal deficiency appearing on the face of the record: *Mintz v. Mintz*, 83 Pa.Super. 85, 89. Where there is no jurisdiction there is no authority to pronounce judgment: *Simpson's Estate*, 253 Pa. 217, 225, 98 A. 35": *Mamlin v. Tener*, 146 Pa.Super. 593, 23 A.2d 90, 92. Cf. *Moskowitz's Registration Case*, 329 Pa. 183, 191, 196 A. 498; *Romberger v. Romberger*, 290 Pa. 454, 139 A. 159.

In the present case, for reasons stated *supra*, 247 Pa.Super. at 234, 372 A.2d at 25, the Prothonotary lacked the statutory authority to enter the original judgment. Therefore this case is more closely analogous to *Vichosky* (lack of jurisdiction) than to *Smith* (failure to comply with rule of court held a procedural irregularity, therefore not available as defense to scire facias) or *Laubach* (attack on original judgment, on ground that underlying note was without consideration and induced by misrepresentations, held an improper attempt to contest the merits of the original judgment). *See also Romberger v. Romberger*, 290 Pa. 454, 139 A. 159 (1927) (judgment held void on its face, since Prothonotary had, by statute, no right to enter judgment against two individuals upon a separate warrant of attorney executed by each). By analogy to *Vichosky*, appellants could have asserted the voidness of the original judgment as a defense in the revival proceedings. Hence the muddle.

The same distinction explains our statement on the applicability of laches to a motion to strike. Judge CERCONE finds our statement "too broad[ ]," since "in many circumstances a motion to strike off a judgment may be barred by laches." Concurring 247 Pa.Super. at 242 n. 4, 372 A.2d at pp. 27, 28 n. 4. True; however, the one circumstance in which laches never applies is precisely that of the present case, *i. e.*, where the original judgment is attacked as void. *See* 7 Standard Pa.Practice 224 (1961):

§ 198. Void Judgments.—A void judgment may be struck off notwithstanding a delay such as would bar the defendant in the case of a judgment merely irregular. A judgment void upon its face may be vacated upon proper application regardless of what length of time has intervened since its entry. A judgment may be stricken off at any time before or after the end of the term during

4

■ There is no merit to appellee's argument that appellants are barred from attacking the original judgment because of the "release of errors" clause in the installment note. In *Grakelow v. Kidder*, 95 Pa.Super. 250 (1928), we said:

[A] lessee, by clear and appropriate language in his lease, may waive his right to attack a judgment entered thereunder, or to have it reviewed in an appellate court, upon the ground of irregularities relating merely to the manner in which the authority conferred by the lease has been exercised, i. e., procedural errors. Such waiver or release of errors does not extend, however, to a fundamental lack of authority to enter the judgment . . . .

*Id.* at 257–58 (citations omitted).

The order of the lower court is reversed, and the case remanded for further proceedings consistent with this opinion.

HOFFMAN, J., concurs in the result.

CERCONE, J., files a concurring opinion.

VAN der VOORT, J., files a concurring and dissenting opinion.

CERCONE, Judge, concurring:

While I agree with the result reached by the majority in the instant case, I do not find the law concerning revival "judgments" in Pennsylvania to be nearly so muddled as the majority does.

The linchpin of appellant's argument, and the rationale of the court below, is succinctly stated in appellee's brief: "In the instant case, the appellant had a reasonable opportunity in the revival proceeding to litigate the claim that the

which entered where the court entering the judgment lacked jurisdiction of the subject matter or of the person. The defense of laches is not available to bar an application to strike off a void judgment.

*See also Romberger v. Romberger, supra* at 456–57, 139 A. at 160.

original judgment was void." However, revival proceedings, in the nature of scire facias to revive, are not presently designed to inquire into the validity of the judgment sought to be revived. The purposes of revival are to maintain the lien of a judgment, revive the lien of a dormant judgment, maintain a judgment as ripe for execution, or ripen a dormant judgment for execution.[1] Since presumptions of payment, albeit rebuttable presumptions ordinarily, arise with the lapse of time,[2] it is readily apparent that scire facias, or revival, is necessary principally to avoid such presumptions which would otherwise deny a judgment creditor the benefit of the record and, in some cases, permit other lien creditors from gaining priority should the lien of the judgment creditor lapse.[3] In short, revival is nothing more than a procedural device to refresh a stale record, and the inquiry at such proceedings should be limited to whether anything has transpired *since the judgment was entered* which affects its revival.

In light of the foregoing it is not surprising to find numerous cases which have reached the conclusion the majority reaches today. In *Smith v. Bald Hill Coal Co.*, 343 Pa. 399, 401, 23 A.2d 466, 467 (1942) our Supreme Court stated:

"It is a firmly established rule that there may be no inquiry, in scire facias proceedings to revive a judgment, into the validity of the original judgment. 'As long as the original judgment stands unimpeached, defenses on a scire facias to revive are limited to those arising after entry of the judgment, such as payment or other discharge.' . . ." Quoting *Eiffert v. Giessen*, 339 Pa. 60, 61, 14 A.2d 130 (1940). See also *Moll v. Lafferty*, 302 Pa. 354, 153 A. 557 (1931).

Even more conclusive language may be found in *First Nat'l Bank & Trust Co. v. Laubach*, 333 Pa. 344, 346, 5 A.2d 139,

1. See 6A Standard Pa. Practice 631–33 (1960).

2. See 12 P.S. § 878 et seq. (1953); 12 P.S. § 2091 et seq. (1967).

3. See, e. g., *Swope v. Turner*, 193 Pa.Super. 217, 163 A.2d 714 (1960).

141 (1939): "On a scire facias sur judgment *no defense is available unless it arose subsequently to the entry of the judgment,* as, for example payment." [Emphasis added.] See also *Cardessa v. Humes,* 5 S. & R. 65 (1819); 6A Standard Pa. Practice 659 (1960).

Since no defense which speaks to the validity of the original judgment may be raised in revival proceedings, it follows that such defenses are not waived *solely* because the judgment debtor suffered the judgment to be revived by default.[4] Therefore, laches aside, a judgment which has been revived is nonetheless subject to being successfully attacked by a motion to strike, if there are defects which render the judgment either void or voidable.

Unfortunately, this rule works a substantial hardship on a judgment creditor who, through a relatively innocuous mistake, has caused a void judgment to be confessed against the debtor. Because revival does not cure the kind of defect raised in the instant case, the judgment creditor has no truly satisfactory remedy. Although judgments may be amended if they contain technical or clerical errors, void judgments cannot be amended. See *W. H. Keech Co. v. O'Herron,* 41 Pa.Super. 108, 111 (1909). See also 6A Standard Pa. Practice 460–61 (1960); 49 C.J.S. Judgments § 258 (1947). Furthermore, the law is clear that once a judgment is confessed by warrant of attorney, the power of the warrant is exhausted, and the warrant may not be used again even if the first judgment was void and has been stricken. See 6A Standard Pa. Practice 416–19 (1960), and the cases cited therein. Thus, although a judgment creditor may limit the damage he might suffer, such as loss of priority of his lien, by moving to strike his own judgment and reinstituting

4. The majority speaks too broadly when it states that "one who petitions to have a judgment stricken is required to show purely formal defects; given such defects, the petitioner prevails without regard to whether his conduct has been equitable." 247 Pa.Super. at 238, 372 A.2d at 26. Actually, in many circumstances a motion to strike off a judgment may be barred by laches. See 7 Standard Pa. Practice 222–24 (1961).

proceedings on the debt,[5] he will not have the expedient of reusing the warrant of attorney to confess judgment. Hence, the penalty for not taking care to file the necessary papers with the prothonotary initially is loss of priority of the judgment lien to intervening liens, and loss of the expedient of confessing judgment. Although I am certain that in many cases, practically speaking, this is tantamount to leaving the creditor without an adequate remedy, the law currently compels this result.

I, therefore, agree that the order of the lower court must be reversed.

VAN der VOORT, Judge, concurring and dissenting:

I concur with the Majority that the case should be remanded to the lower court for consideration of that part of appellant's petition requesting that the judgment be opened. However, I respectfully dissent from that part of the Majority's holding that would include consideration by the lower court of the part of appellant's petition requesting the court to strike off the judgment.

Although appellant entitled his motion, "Petition to strike off judgment or in the alternative to open judgment", the two are not one and the same and should be considered separately. The Majority points out this distinction, but nonetheless, relying on the case of *Schuylkill Trust Co. v. Haupt,* 359 Pa. 338, 59 A.2d 73 (1948), where the plaintiff issued a sci. fa. to revive a judgment entered after default and the defendant did not appear nor answer, and the Pennsylvania Supreme Court held that the judgment should have been opened, the Majority infers that the Supreme Court would have permitted the judgment to be stricken. I agree, based on the authority of *Schuylkill Trust Co. v. Haupt, supra,* that this case should be remanded for consideration of that part of appellant's petition requesting that the judgment be opened, however, I do not agree that *Schuylkill Trust* permits the inference that the part of

5. *Herdic v. Woodward,* 75 Pa. 479 (1874), 7 Standard Pa. Practice 226–27 (1961).

appellant's petition requesting the judgment be stricken should likewise be entertained.

I am of the opinion that the case of *Mayer Furniture Company v. Putt,* 3 D. & C. 542 (1923) states the proper position in situations where a motion to strike has been filed subsequent to a validly conducted and duly entered revived judgment. *Mayer* represents that line of cases that hold a revived judgment, if entered properly, insulates the original judgment, though it be void or voidable, from attack by a motion to strike it off. After careful analysis of the cases that support the different sides of the issue, the court stated:

> We think the greater weight of authorities in our jurisdiction is that where judgment is taken in default on a *scire facias* to revive a judgment that is void or voidable, the court, upon motion, should not strike it off. There is nothing irregular on the face of the judgment taken on *scire facias.* In the case of *Breden v. Gilliland,* 67 Pa. 34, Sharswood, J., said: "Opening a judgment and striking it off are two entirely different things. No court has power to strike off a judgment regular on its face." See, also, *Johnson v. Royal Ins. Co.,* 218 Pa. 423, 67 A. 749, and *Long v. Lemoyne Borough,* 222 Pa. 311, 71 A. 211. *Mayer Furniture Company v. Putt,* 3 D. & C. 542, 546 (1923).

In the Majority's analysis of the different sides of the issue, it cites the case of *Duff v. Wynkoop,* 74 Pa. 300 (1873) as being representative of that line of cases supporting the position that a properly revived judgment protects the original invalid judgment from attack. The Majority then goes on to limit *Duff* on the basis that the case concerned the Act of 1705, Sect. 9, 1 Sm.L. 57, 61 (1810), and the sale of land pursuant to an execution on the revived judgment. This analysis was undertaken in an attempt to reconcile *Duff* with *Eldred v. Hazlett's Administrator,* 38 Pa. 16 (1860) which held that a revival of an original judgment does not protect that judgment from subsequent attack. However, I do not interpret *Duff* to be as narrow as the Majority would have it be. That case, along with others, was cited as

precedent for the *Mayer* decision. Although the court in *Mayer* was confronted only with a motion that the judgment be stricken, it was cognizant of the distinction between a motion to strike off a judgment and a motion to open a judgment. Early in its opinion the *Mayer* court called attention to this difference when it stated:

In the case of *Hamborsky v. Magyar Presbyterian Church,* 78 Pa.Super. 519, the rule of this and other jurisdictions is laid down as follows: "A rule to strike off a judgment is a common law proceeding; the procedure to open is equitable. The function of each is clearly stated in many decisions, although the two are not only frequently confused in practice, but occasionally one is permitted to perform the function of the other." *Mayer Furniture Company v. Putt,* 3 D. & C. 542, 543 (1923).

Although appellant's motion contained both requests pleaded in the alternative, each one must be considered separately and in light of proper procedure. Therefore, I would concur with the Majority that based on *Schuylkill Trust Co., supra,* the part of the petition requesting the judgment be opened should be remanded to the lower court; but since the revived judgment is correct on its face it should stand and not be subject to attack by a petition to strike.