## Lenson *v.* Sandler, Appellant.

Argued April 21, 1967. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Lawrence A. Brown,* with him *Duffy, McTighe and
McElhone,* for appellants.

*I. Jerome Stern,* with him *Robert J. Stern,* and
*Stern and Stern,* for appellee.

OPINION BY MR. JUSTICE JONES, April 24, 1968:

This is an appeal from an order of the Court of
Common Pleas of Montgomery County refusing to
strike off a judgment entered by confession and, at

the same time, correcting the amount of the judgment by reducing it from $66,622.50 to $20,715.46.

On January 31, 1961, Lansdowne Centre Building, Inc. (Lessor), by and through its agent, Simon Lenson (Lenson), and Robert B. Klovsky and Beatrice B. Klovsky, his wife, and Norman Sandler and Mildred W. Sandler, his wife, individually and trading as Crossroads Pharmacy (Lessees), entered into a written lease for premises, known as the Landsdowne Centre Building, located at the northwest corner of Baltimore Avenue and Lansdowne Avenue, Lansdowne Borough. The term of the lease was for a period of ten years, running from February 1, 1961 to January 31, 1971. The minimum annual rental was stated: "The minimum annual rent for the first five (5) years for the said term of this lease shall be Seventy-eight Hundred ($7800.00) Dollars in monthly installments of Six Hundred and Fifty ($650.00) Dollars; and for the last five (5) years of the said lease at the annual rate of Eighty-four Hundred ($8400.00) Dollars, payable in monthly installments of Seven Hundred ($700.00) Dollars, rent to begin on the 1st day of February, Nineteen Hundred and Sixty-one (1961)."

Lessees, on or about April 19, 1963, sublet the premises to Hillbrook Drug Co., Inc. (Hillbrook). On May 1, 1964, a default in the rent occurred and, on May 14, 1964, Simon Lenson, as *agent* for lessors, filed with the Prothonotary of Montgomery County a praecipe for entry of judgment and assessment of damages under the confession of judgment clause contained in the lease, together with an averment of default and an affidavit of nonmilitary service. Although Lenson, the agent, was also an attorney at law, he did not enter an appearance for defendants and confess judgment for them *in such status* as the terms of the lease permitted. Instead, as provided in the Act of 1806, Feb.

24, P. L. 334, 4 Sm. L. 270, §28 (12 P.S. 739), by virtue of a praecipe, the prothonotary entered the judgment and assessed the damages.

We agree with the court below that the execution of the lease by Simon Lenson, agent for Lessor, did not violate the Statute of Frauds (the Act of 1951, April 6, P. L. 69, art. II, §202, 68 P.S. §250-202), and that the lease is a valid instrument, duly executed by an agent of Lessor, who was authorized in writing to manage and operate the Lansdowne Centre Building.

The only issue we need consider is whether, under the Act of 1806, supra, the Prothonotary of Montgomery County had the authority, within the terms of the written lease here involved, to enter judgment by confession and to assess damages.

The praecipe for entry of judgment and the assessment of damages, as originally filed, read as follows:

"To the Prothonotary

"Enter judgment in favor of the plaintiff and against the defendants by confession on the annexed lease, release of errors and waiver of exemption, etc., and assess damages as follows:

| | |
|---|---|
| Rent to 1/31/66 at $650.00 per month | $21,400.00 |
| Rent 2/1/66 to 1/31/71 at $700.00 per month | 42,000.00 |
| Total Rent | 63,450.00 |
| Attorneys' fee, 5% | 3,172.50 |
| Total | 66,622.50" |

The Act of 1806, in pertinent part, provides: "It shall be the duty of the Prothonotary of any court of record . . . to enter judgment against the person or persons who executed the same, for the amount which *from the face of the instrument* may appear to be due. . . ." (Emphasis added).

The lease in question created an estate for a 10 year term and rent was payable during the first 5 years at the monthly rate of $650 and during the last 5 years at the monthly rate of $700. With this in mind and taking as the date of default that which is set forth in the averment of default, it would, at first blush, seem clear that the prothonotary, by a mere reduction of these terms to monetary figures, might arrive at a correct assessment of damages based upon the rent due from the date of default to the end of the term.

However, it is well settled that, under the Act of 1806, the prothonotary can enter judgment only for the amount which, *from the face of the instrument*, may appear to be due. As a corollary to this oft-stated rule, it is also the law that where the amount due is not apparent from the face of the instrument but may be calculated from information which the instrument itself furnishes, then too can the prothonotary assess damages and enter judgment: *Noonan, Inc. v. Hoff*, 350 Pa. 295, 38 A. 2d 53 (1944). The entry of judgment is a ministerial act by the prothonotary and, if the amount of the judgment cannot be ascertained without resort to evidence dehors the writing, then he has no statutory authority to enter the judgment: *Lansdowne Bank and Trust Company v. Robinson*, 303 Pa. 58, 154 A. 17 (1931).

The rationale of the Act of 1806 was set forth in *Meyers & Joly v. Freiling*, 81 Pa. Superior Ct. 116, 118 (1923), in an able opinion by the late Judge HENDERSON, who stated: ". . . the statute must be strictly followed for it does not give general authority as in the case of an attorney-at-law to appear and confess judgment. The statute was evidently adopted to enable a creditor to obtain a judgment on an obligation for the payment of money without the expense of the intervention of an attorney. Obviously, such judgment could

198

only be entered for an amount appearing to be due by the terms of the obligation, and this is what the statute expressly declares. The judgment is to be entered for an amount which appears to be due on the face of the instrument. When this amount cannot be ascertained without a resort to evidence outside of the writing, the statute does not support the judgment. Where there is not a fixed and definite amount admitted to be due on the face of the instrument, the prothonotary has not authority to accept evidence on the subject and in the capacity of an arbitrator or referee ascertain facts not appearing in the instrument to which the warrant of attorney is attached. Justification for bringing a defendant into court and fixing his liability in the conclusive form of a judgment on a warrant of attorney must be found in the terms of the instrument containing the authority, and, in the case of a prothonotary acting under the statute, is not to be extended beyond the definite power which the law confers."

The authority given to the prothonotary must be strictly construed and the instrument upon which the prothonotary acts must contain sufficient definite information, either expressly or by the clearest implication, to allow him to proceed under the Act. The expression "clearest implication" means an implication so clear that only one meaning can be taken from it: Schwartz v. Sher, 299 Pa. 423, 149 A. 731 (1930). In our view, the lease under consideration did not contain sufficient definite information, either expressly or by clear implication, to enable the prothonotary to proceed as he did; on the contrary, it did contain language so express as to preclude him from entering judgment on the instrument. The information provided by the lease could have only one meaning, and it rendered the prothonotary without authority to proceed.

The grant of authority for the confession of judgment, contained in paragraph 16, reads, in part: ". . . Lessee hereby empowers any Prothonotary or attorney of any court of record to appear for lessee . . . (and) to confess judgment against lessees for all or any part of the rent specified in this lease and then unpaid including, at Lessor's option, the rent for the entire unexpired balance of the term of this lease, and/or other charges, payments, costs and expenses reserved as rent or agreed to be paid by the lessee . . . ." However, other clauses of the agreement had specifically defined, although in contradictory terms, the *value* to be placed upon the rent due after default. It is this question of value which is the crux of this case.

Paragraph 14 (2) of the lease provided that, in the event of a default in payment of the rent, violation of any of the covenants of the lease, a vacating of the premises by the Lessees, or insolvency of the Lessees: "(2) This lease and the term hereby created shall determine and become absolutely void without any right on the part of the Lessee to save the forfeiture by payment of any sum due or by other performance of any condition, term or covenant broken; whereupon, Lessor shall be entitled to recover damages for such breach in an amount equal to the amount of rent reserved for the balance of the term of this lease, *less the fair rental value of the said demised premises, for the residue of said term.*" (Emphasis added). Paragraph 15 (c) provided that, in the event of any default on the part of the Lessee as set forth in section 14, the Lessor "may lease said premises or any part or parts thereof to such person or persons as may in Lessor's discretion seem best and the Lessee shall be liable for any loss of rent for the balance of the then current term."

The difference between these clauses is self-evident. Under paragraph 15 (c), if the lessor *relet* the prem-

ises to another tenant, but for a lesser amount of rent, the lessees would be liable for the loss of rent to the end of the term. But, paragraph 14 (2) defined damages for a breach, as here occurred, as an amount equal to the "amount of rent reserved for the balance of the term of this lease, less the fair rental value of said demised premises, for the residue of said term."

It is obvious that, since judgment was entered on May 14, 1964—a month and a half before lessor had relet the premises to another tenant—the lessor was proceeding under paragraph 14 (2). The question before us then is whether in the assessment of damages it was necessary that the amount of rent reserved for the balance of the term of the lease had to be reduced by the "fair rental value of the said demised premises, for the residue of said term." This lease-provided procedure was not followed when judgment was entered—nor was it attempted until May 21, 1965, when the lessor filed a reply to the petition to strike off judgment and, for the first time, the Lessor gave certain credits to the Lessees, but credits obviously predicated on paragraph 15 (c) of the lease and not on paragraph 14 (2). These credits included "Rent due under existing lease from 10/1/64 to 9/30/69 at $400.00 per month—$24,000.00. Rent 10/1/69 to 1/31/71 at $400.00 per month—$6400.00". These credits plus certain others totalled $34,934.54, rendering a "balance due on judgment" of $23,497.96. The "existing lease" above referred to a lease entered into between Lansdowne and new tenant for a term of 5 years at a monthly rental of $400.00. An attempt was made to apply this credit to the judgment under the provision of paragraph 15 (c) of the lease which held the lessees "liable for any loss of rent for the balance of the then current term" if the occasion arose that the lessor relet the premises. Since judgment was en-

tered at a time when the premises had *not* been relet and damages assessed as of *that* date, under paragraph 14 (2) of the lease as above, the Lessor, by his reply to the petition to strike off judgment, attempted to proceed under an alternate provision of the lease than the one under which he originally elected to obtain judgment. We are not constrained to allow him to do so, since, having elected to enter judgment by reason of a default before the premises were relet, lessees were thereafter entitled to have the issue of the fair rental value of the premises for the residue of the term decided in a proper proceedings before a jury if they so chose, after the issue of the propriety of the entry of judgment was decided.

The issue before us would not have arisen had the Lessor pursued its remedy by entering judgment in an amicable action by an attorney under the authority conferred in the warrant contained in the lease. Had such been done, it would only have been necessary that the affidavit on which the confession of judgment was based set forth Lessee's default justifying the entry of the judgment and the amount *alleged* to be due as a result thereof. The judgment then entered would have been valid and, if Lessees had wished to contest the facts contained in the affidavit and entry of judgment, they could have petitioned the court to open the judgment so that evidence might be presented to mitigate the *alleged* assessment of damages: *Gratz Brothers v. Margolis,* 186 Pa. Superior Ct. 268, 142 A. 2d 375 (1958) ; *Kros v. Bacall Textile Corp.,* 386 Pa. 360, 126 A. 2d 421 (1956) ; *Noonan, Inc. v. Hoff,* supra. The Lessor did not so proceed.

The clear distinction between the entry of judgment by a prothonotary and the entry of judgment as a result of an amicable action filed by an attorney under the warrant in the instrument must be maintained.

202

Since the Lessor proceeded as it did, was the prothonotary able to determine the specific amount of damages due? To do so in this case he would necessarily have had to deduct an amount representing the fair rental value of the premises from the amount of rent due from the date of default. However, the lease is silent as to what would be the fair rental value of the premises and does not provide any method for computing it. By the very agreement of the parties this factor had to be taken into consideration when assessing damages accruing after default, and it became incumbent on the prothonotary to determine the value of such factor. This he was powerless to do since it would have necessitated that he arrive at a value factor whose daily fluctuation and vagaries comprise an entire industry involving specialists who spend lifetimes learning the assessment of market and rental values of commercial buildings. They acquire an expertise involving distinctions not readily apparent to the average layman, nor any more apparent to the prothonotary as a result of the operation of his office.

The lease itself contained a built-in credit but for an unliquidated sum. Since this was the agreement of the parties,—arrived at in an arms length transaction—we would be loath to ignore the specific provision allowing the credit absent some showing of fraud, accident or mutual mistake, none of which are even tacitly suggested here. A credit frequently may be endorsed on such an instrument and, if the amount of credit is readily apparent to the prothonotary from the face of the instrument, then by deducting the amount of the credit from the face amount he can arrive at a proper amount on which to enter judgment: *Morel v. Morel,* 81 Pa. Superior Ct. 84 (1923) ; *Better Bilt Door Co. v. Oates,* 165 Pa. Superior Ct. 465 (1949).

But where the amount of the credit cannot be ascertained from the face of the instrument, and where the instrument declares expressly that the credit is a factor to be taken into consideration in determining the amount of damages due after default, then the prothonotary cannot assess damages without a hearing dehors the face of the instrument, and consequently cannot enter judgment.

As this Court said in *Roche v. Rankin*, 406 Pa. 92, 95, 176 A. 2d 668 (1962) in an able opinion by Mr. Justice EAGEN: "It has been held that the Act of 1806, supra, being in derogation of the common law must be strictly construed: [citing cases]. Also, that a judgment by confession must be self-sustaining and cannot be entered where matters outside of the record need be considered to support it . . . . If matters outside of the instrument itself necessarily had to be considered in order to determine the amount of money due, then of course, the prothonotary would lack the legal power to enter the judgment under the Act of 1806."

These principles rule the case at bar since resort had to be made to matters outside of the instrument itself to determine the fair rental value of the premises for the residue of said term. Accordingly, in our view, the court below was in error in refusing to strike off the judgment as entered by the prothonotary.

Order reversed.

Mr. Justice COHEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The error in the majority opinion, as I view this case, is the failure to give paragraph 16 of the lease its natural reading. In relevant part, that paragraph provides: "If rent and/or charges hereby reserved as rent shall remain unpaid on any day when the same

204

ought to be paid Lessee hereby empowers any Prothonotary . . . to appear for Lessee in any and all actions which may be brought for rent . . . and in said suits . . . or actions to confess judgment against Lessee for all or any part of the rent specified in this lease and then unpaid including, *at Lessor's option, the rent for the entire unexpired balance of the term of this lease . . . and for interest and costs together with an attorney's commission of 5%.*" (Emphasis supplied) The lease further provides in paragraph 21 that all of the remedies given to lessor "shall be cumulative and concurrent." Clearly, paragraph 16 allows the lessor to obtain judgment for rent for the balance of the term once the tenant defaults in any rent payment. Paragraphs 14(2) and 15(c) are alternative remedies and thus in no way affect the lessor's *power* to enter judgment for the balance of the rental due; they do, as the court below properly recognized, have impact on the sum the landlord may recover. The evident purpose of paragraph 16 is to permit the landlord to obtain full protection for any claim he might have with the assurance that, if he is unable to obtain a satisfactory substitute tenant, he has already by virtue of his judgment obtained priority for his claim.

Given the fact that paragraph 16 expressly permits entry of judgment for the rent due on the balance of the term, I fail to see how the prothonotary must make reference to matters outside the record to calculate the amount of the judgment he will enter. The lease itself contains the length of the term and the amount of rent agreed upon. All that is necessary to calculate the amount of judgment is the date of default and an indication that the landlord is exercising his option to enter judgment for all rent due on the unexpired term. These facts were made available to the prothonotary by the averment of default, a document which, in *Roche*

*v. Rankin,* 406 Pa. 92, 176 A. 2d 668 (1962), we expressly held is not outside the record. I thus conclude that the amount of the judgment could be ascertained without evidence dehors the record. The prothonotary therefore had statutory authority to enter the judgment.

Next must be considered appellants' other arguments offered in support of their motion to strike.[1] We said in *Roche* (supra at 97, 176 A. 2d at 672): "However, if the judgment is entered for items clearly within the warrant, but for an excessive amount, the court, rather than strike, will modify the judgment and cause a proper judgment to be entered, unless (1) the judgment was entered for a grossly excessive amount and, hence, was an improper use of the authority given in the warrant; or, (2) the judgment entered shows on its face that unauthorized items were included: [citations omitted]." Appellants insist that the judgment entered ($66,622.50) was grossly excessive for the following reasons: (1) it contained a $8,190 mathematical error; (2) an attorney's fee of $2,782.50 was improperly included;[2] and (3) credit for $34,934.54 for fair rental value was not given pursuant to paragraph

---

[1] I agree with the majority that the court below has correctly resolved the statute of frauds issue.

[2] Appellants apparently do not contend that vis-a-vis the attorney's fee they can avail themselves of the second ground listed in *Roche* which will support a motion to strike, i.e., the inclusion of an *unauthorized* item. This is probably a result of a realization that such an attack would not succeed for, although an attorney's fee is not properly included in a judgment secured under the Act of 1806, *it was authorized on the face of the lease.* The court below adopted the proper course when it modified the judgment to exclude the attorney's fee for a striking of the judgment would have been improper. See *Sterling Electric & Furniture Co. v. Peterson,* 409 Pa. 435, 438, 187 A. 2d 285, 287 (1963); cf. *McDowell National Bank of Sharon v. Vasconi,* 407 Pa. 233, 178 A. 2d 589 (1962).

14(2) of the lease. The court below agreed that credit should be given for these items and thus reduced the judgment to $20,715.46, an amount appellants do not dispute is owing. I think it beyond doubt that the judgment entered was not grossly excessive. The bulk of the alleged excess is produced by the credit subsequently given for the fair rental value of the unexpired term. Since the lease expressly authorized a confession of judgment for all rent due for the balance of the term, a judgment entered for that amount cannot be considered excessive. Secondly, although an improperly included item, see footnote 2, supra, the attorney's fee was authorized by the lease; having been authorized, its inclusion should not make the entry excessive. Finally, the $8,000 error should not vitiate the judgment; not only am I unable to classify an $8,000 excess in a $66,000 judgment as gross, but I believe that the basis for the "grossly excessive" doctrine, i.e., a method to control abuse of the power conferred in an instrument to confess judgment, does not apply to a mathematical error. See Shuchman, Judgment Notes in Pennsylvania §8.1 (1961). These observations are confirmed by *Flomar Corporation v. Logue*, 418 Pa. 181, 210 A. 2d 254 (1965), our most recent case involving an alleged grossly excessive judgment. In *Flomar*, we characterized a $17,500 judgment as grossly excessive when the amount for which it should have been entered was $4,300. What is most important is the fact that the excess in *Flomar* was the result not of a mathematical error but of an attempt to include rent for the unexpired balance of a term of a lease when the lease, as a matter of law, did not allow entry for that amount.

Finally, appellants suggest that appellee took possession of the premises for itself and not on behalf of the lessees so that the lessor is not entitled to both

possession and future rent. The court below found, however, that appellee took possession on behalf of the tenant. This conclusion was based upon the fact that the lessor did not avail himself of the ejectment remedy provided in paragraph 17 of the lease.[3] Although their brief is not clear, appellants apparently premise their argument upon the fact that the landlord made no demand for rent. The cases on which they rely, see, e.g., *Elizabethtown Lodge No. 596 v. Ellis*, 391 Pa. 19, 24, 137 A. 2d 286, 289 (1958), specifically state that a demand for rent is not necessary where such is expressly waived by the terms of the lease. This lease declares in paragraph 8: "Lessee covenants and agrees that he will *without demand* (a) Pay the rent . . . ." (Emphasis supplied.) Certainly, this declaration is a waiver.

I conclude that the court below was correct in its refusal to strike this judgment and must therefore dissent.

---

[3] Furthermore, it is doubtful that this contention is properly before us because it was not properly before the court below. It is well settled, subject to certain narrow exceptions not here applicable, that a petition to strike cannot be based on matters dehors the record. See generally Shuchman, Judgment Notes in Pennsylvania §44.2, §45.1 (1961). To demonstrate that the landlord took possession on his own behalf when the affidavit of default does not so disclose would require proof by evidence dehors the record.