Jurellene **JORMAN**, Benjamin Govan, Eddy L. Hodge, Carrie Hodge, Edward Keate, Jannis Moore, Margaret E. Rhodes, Essie Robinson, Barbara A. Spears, John H. Spears, Karen Flynn Haffner, William Haffner, Leonard Judickas, Phyllis Kinnerk, John Kinnerk, Mary Ceil McManus, Eva M. Swiontkowski, Emily D. Thomas, Lauretta L. Winterhelt, Southwest Community Congress, and 6500 Block Club, Plaintiffs,

v.

**VETERANS ADMINISTRATION OF the UNITED STATES, and Joseph Maxwell Cleland, Defendants.**

No. 77 C 581.

United States District Court, N. D. Illinois, E. D.

Sept. 17, 1980.

461

Alexander Polikoff, Douglas W. Cassel, Jr., Chicago, Ill., for plaintiffs.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This action involves allegations of actual and threatened systematic racial transition of specific residential neighborhoods in Marquette Park, Chicago, allegedly caused by the heavy use of government funding. Count I claims that the defendant, Veterans Administration (VA), violated its duties under § 808(d) of the Fair Housing Act, 42 U.S.C. § 3608(c), in the manner in which it administered its VA home mortgage program in Marquette Park. Count II, brought under §§ 810(d) and 812 of the Fair Housing Act, 42 U.S.C. §§ 3610(d), 3612, alleges violations of the Act in that the defendant knowingly participated in, facilitated, and condoned unlawful steering, solicitation, and appraisals in Marquette Park, 42 U.S.C. §§ 804, 805, 806, 817. Jurisdiction is founded upon 42 U.S.C. §§ 3608(c), 3610(d), and 3612.

Defendant has moved to dismiss both Counts for lack of standing, Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief may be granted, Fed.R. Civ.P. 12(b)(6). Although defendant contends that Counts I and II present identical claims, the Counts clearly state separate and independent causes of action and, accordingly, will be considered separately.

Plaintiffs assert that the recent Supreme Court case of *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) is dispositive of the standing issues with respect to Count II. In *Bellwood*, the Court extended its holding in *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) to provide standing under § 812 of the Fair Housing Act, 42 U.S.C. § 3612, to residents of a particular neighborhood who had been deprived of the "social and professional benefits of living in an integrated society" and who complained of economic injuries because of the diminution in property value of their homes. *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

Were this the extent of the *Bellwood* holding, plaintiffs' standing to assert Count II would be undeniable. The Court in *Bellwood* emphasized, however, that in no event may a plaintiff proceed in federal court without first satisfying the Article III requirements of a " 'distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted." *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), *quoting, Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

There is no significant difference between the allegations in Count II and those which were held to satisfy the Article III requirements in *Bellwood*. Like the complaint in *Bellwood*, Count II was brought under § 812 of the Fair Housing Act, 42 U.S.C. § 3612. Count II avers that the plaintiffs are both direct and indirect victims of specific discriminatory acts of illegal solicitation and racial steering. The complaint in *Bellwood* similarly alleged indirect injury due to unlawful racial steering. Count II's allegation of the deprivation of the social and economic benefits of living in a racially and economically integrated, residential community is tantamount to the allegation in *Bellwood* that the plaintiffs had been "deprived of the social and professional benefits of living in an integrated society," *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1603–1604, 60 L.Ed.2d 66 (1979). Finally, the complaint in *Bellwood* and Count II both allege economic injury due to the diminution in property value of the plaintiffs' homes.

Defendant contends, however, that Count II should fail because the Veterans Administration is under the statutory duty to guarantee loans to qualifying veterans and is without the flexibility necessary to remedy the plaintiffs' grievances. A cursory reading of 38 U.S.C. ch. 37, which establishes the VA home loan and guarantee program, would support defendant's argument. Section 1802 of that chapter limits the factors which can be considered by the Veterans Administration to three criteria: 1)

whether the veteran is eligible; 2) whether the purpose of the loan is within the scope of chapter 37; and 3) whether the loan is made within the provisions of that chapter. 38 U.S.C. § 1802.

 Sections of statutes should not be read in isolation and must be considered in their relation to the statute as a whole. In particular, the Court must consider § 1804(d) which provides that:

> [S]ubject to notice and opportunity for a hearing, whenever the Administrator finds with respect to guaranteed or insured loans that any lender has failed to exercise proper credit judgment or *has willingly or negligently engaged in practices otherwise detrimental to the interest of veterans or of the government, the Administrator may refuse either temporarily or permanently to guarantee or insure loans made by such lender and may bar such lender or holder from acquiring loans guaranteed or insured under this chapter* .... The Administrator may also refuse either temporarily or permanently to guarantee or insure any loans made by a lender or holder refused the benefits of participation under the National Housing Act pursuant to a determination of the Secretary of the Department of Housing and Urban Development. 38 U.S.C. § 1804(d).

Section 1804(d) belies the rigidity which defendant would read into the statutory duty of the Veterans Administration. Because the VA may consider whether a prospective applicant or lender has "engaged in practices ... detrimental to the interests of veterans or of the government," it is responsible as an "executive agency" to the requirements of § 808(d) of the Fair Housing Act, 42 U.S.C. § 3608(c). Finally, the requests for declaratory relief and for such further relief as the court may deem appropriate are permissible remedies, 42 U.S.C. §§ 2201–02. Consequently, plaintiffs have standing under Count II.

Plaintiffs concede that Count I, brought under 42 U.S.C. § 3608(c), is not subject to the liberal standing provisions of 42 U.S.C. §§ 3610(d) and 3612, and, therefore, *Bell-* *wood* does not strictly apply. *Bellwood* did reaffirm other Supreme Court cases which have held that the issue of standing involves "both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1607–1608, 60 L.Ed.2d 66 (1979); *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). The Court explained that the constitutional limitations evolved from Article III's "case and controversy" clause, while the prudential limitations are "principals by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

 The *Bellwood* Court recognized three basic prudential limitations to the exercise of federal court jurisdiction. *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1608 & n. 6, 60 L.Ed.2d 66 (1979). First, the litigant must assert an injury which is peculiar to himself or to a distinct group to which he is a party, *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Second, the litigant must assert his own interests rather than those of a third party, *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). Third, the interests of the plaintiff must be arguably within the zone of interests sought to be protected under the statute. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39 n. 19, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976); *Association of Data Processing Services v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1969).

 Plaintiffs have satisfied the first criterion by asserting their own particular interests in living in a balanced, interracial community, and in not having the property values of their homes diminished. Their

common concern stems from their residence within a particular neighborhood. As such, the plaintiffs cannot be compared to the two *Bellwood* plaintiffs who were found not to have standing because they resided outside of the targeted neighborhood, *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1614 n. 25, 1616, 60 L.Ed.2d 66 (1979).

Having asserted their own legal interests, the plaintiffs have satisfied the second requirement and have not alleged simply an "abstract concern about a problem of general interest." *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 254, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). The plaintiffs' standing is not affected because other area residents who have not been joined in the lawsuit suffer similar injuries. Courts have long recognized that "standing is not to be denied simply because many people suffer the same injury." *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973).

■ Lastly, by alleging that they have suffered or are going to suffer from the massive racial resegregation of their community, plaintiffs have asserted an interest within the zone to be protected by 42 U.S.C. § 3608(c). The purpose of the Fair Housing Act is to provide "fair housing throughout the United States," 42 U.S.C. § 3601, by bringing about "truly integrated and balanced living patterns." *Trafficante v. Metropolitan Life Ins. Co.*, 405 U.S. 205, 211, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972).

■ Standing under Article III requires that the plaintiffs claim a distinct and palpable injury to themselves as a result of the defendant's conduct that is likely to be redressed if the requested relief is granted. *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). As previously noted, the plaintiffs have alleged sufficient injuries to satisfy the constitutional requirement of "actual or threatened harm," *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1614, 60 L.Ed.2d 66 (1979). Defendant's argument that the plaintiffs stand to benefit from the influx of blacks into their neighborhood misconstrues the nature of plaintiffs' complaint. They do not complain about the normal movement of different races within their community. Rather, plaintiffs assert that the massive racial resegregation caused, in part, by the manner in which the VA administers its home loan program, will disrupt the "stable, racially integrated housing" in their community. *Linmark Assoc., Inc. v. Willingboro Twp.*, 431 U.S. 85, 94, 97 S.Ct. 1614, 1619, 52 L.Ed.2d 155 (1977).

As for the causation element, the plaintiffs specifically have alleged that the manner in which the VA administered its home loan program "has injured, continues to injure, and will irrevocably injure" them. Whether the extent to which the VA financed homes in the community actually contributed to the plaintiffs' injuries is a question of fact which must await resolution at trial. Likewise, whether the VA had, in fact, administered its programs in a method contrary to the provisions of the Fair Housing Act is a factual consideration. *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1615 n. 29, 60 L.Ed.2d 66 (1979).

■ The final element of standing under Article III, redressibility, has been considered with respect to Count II, and the same reasoning applies to this Count. Finding no prudential or constitutional limitations, the plaintiffs have standing to assert Count I of their complaint.

Defendant's motion to dismiss the complaint for failure to state a claim relies on the assumption that the VA's mandatory duties under the veterans home loan guarantee program relieves the defendant of its affirmative duty under the Fair Housing Act. The Court finds nothing in the statutory authorization for the veterans home loan program which would abdicate the duty of the VA to consider the impact of its activities on the racial concentration of Marquette Park by taking into considera-

tion relevant racial and socio–economic data. *Shannon v. HUD*, 436 F.2d 809 (3rd Cir. 1970). *Accord, South East Chicago Commission v. HUD*, 488 F.2d 1119 (7th Cir. 1973). Counts I and II state separate, cognizable claims.

For the foregoing reasons, defendant's motions to dismiss for lack of standing and for failure to state a claim upon which relief may be granted are denied.